IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IOU CENTRAL, INC. : <br> d/b/a IOU FINANCIAL, INC : <br> : <br> Plaintiff, : <br> vs. : <br> : <br> PHYSICAL THERAPY SERVICES OF : <br> BARTLESVILLE, INC. A/K/A : <br> BARTLESVILLE PHYSICAL : <br> REHABILITATION, A/K/A : <br> BARTLESVILLE PHYSICAL REHAB : <br> : <br> Defendant. | CASE NO. |

**COMPLAINT**

Plaintiff IOU sues the Defendant as follows:

1. Plaintiff IOU is incorporated in Delaware, whose principal place of business is located in Georgia, which is a citizen of both states per 28 U.S.C. §1332.

2. Defendant Bartlesville Physical Rehab [BPR] is a corporation incorporated in Oklahoma, the location of its principal place of business, of which it is a citizen per § 1332.

3. Per 28 U.S.C. §1332, jurisdiction exists as to the diverse parties and the sum in controversy exceeds $76,000.00 per the value of the relief from plaintiff's perspective, with attorney's fees. ***Jones v. Landry***, 387 F.2d 102 (5th Cir. 1967); ***Cohen v. Office***, 204 F.3d 1077 (11th Cir. 2000); ***Occidental v. Bullard***, 995 F.2d 1046 (11th Cir. 1986). The object of this litigation is damages and/or equitable relief on property valued in excess of $76,000.00. ***Groves v. Rogers***, 547 F.2d 898, 900 (5th Cir. 1977); ***Waller v. Prof.***, 296 F.2d 547 (5th Cir. 1961) Per § 28 U.S.C. 1367, jurisdiction exists on all claims.

4. No relief is sought as to Elizabeth Michelle Henley/Arthur Henley, discharged on IOU's debt in Chapter 7 Bankruptcies, N.D. of Oklahoma Case Nos. 15-11476-R and 11459-R.

5. Defendant BPR did not and cannot receive a bankruptcy discharge on IOU's debt, to which the § 362 stay is inapplicable, against which this suit may proceed. **_GATX v. M/V_**, 768 F.2d 716 (5th Cir. 1985); **_Wedgeworth v. Fibreboard_**, 706 F.2d 541 (5th Cir. 1983)

6. Per O.C.G.A. § 9-10-90 *et seq* and/or the Constitution, personal jurisdiction exists, is proper and just for BPR, which (b) resided in and/or transacted business in Georgia, personally and/or through agent(s); (c) committed and/or conspired to commit tortious acts or omissions in Georgia; and/or committed Georgia acts or omissions as an agent; and/or committed tortious injuries in Georgia by acts/omissions outside of Georgia; (d) engaged in persistent Georgia contact; (e) derived revenue by Georgia goods and/or consumed Georgia services; (f) and/or reasonably consented to personal jurisdiction in Georgia, where it is are subject to liability, which purposefully availed itself to conducting Georgia activities.

7. Under 28 U.S.C. § 1391 and § 90, venue is proper as BPR resides in this District; and/or a substantial part of the events or omissions giving rise to the claims occurred here; and/or the property at issue is located in this District; and/or Defendant BPR consented to this venue.

8. Elizabeth Michelle Henley [EH] Arthur Henley [AH] are married, operating BPR since 1995 as a physical therapy clinic at 4100 S.E. Adams Rd, A-100, Bartlesville, OK 74006.

9. EH/AH sought to obtain funds for Defendant BPR's alleged business but actually sought the funds for their personal use.

10. On 10/30/14, EH submitted a Loan Application to IOU's website, at its Georgia office, for a commercial loan [First Loan] on behalf of Defendant BPR.

11. On 11/5/14, EH spoke by phone with IOU's Georgia staff confirming the information in the First Application and below First Loan Documents on behalf of BPR.

12. On 11/5/14, EH electronically executed a Promissory Note to IOU, on behalf of BPR for the gross/principal sum of $63,000.00, at IOU's Georgia office, through its website, in exchange for IOU's Loan Funds, confirming the information in the Application and the phone call as to the Application, agreeing to Georgia law and Georgia venue in the Note. [First Note]

13. The First Note includes a Security Agreement, by which BPR guaranteed its real and/or personal property as collateral for this Loan, upon which IOU relied, stating as follows:

> As security for the due and punctual payment of all amounts due or to become due and the performance of all obligations of Borrower from time to time under this Note and all extensions, renewals and amendments of any of the foregoing Borrower hereby pledges, transfers, assigns, conveys and grants a security interest to a continuing lien upon and security interest in and to all of Borrower's now owned or hereafter acquired, created or arising property including any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible, and in each case regardless of where such Property may be located and whether such Property may be in the possession of Borrower, Lender or a third party and shall include any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible and (1) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions: and (2) all other tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes, (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health care insurance receivables, (i) deposit accounts, (j) general intangibles, including payment intangibles and software, and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The collateral includes all accessions, attachments, accessories, parts, supplies and replacements for the collateral, all products, proceeds and collections thereof and all records and data relation thereto.  [Promissory Note Paragraph 20]

14. On 11/5/14, EH electronically executed a Guaranty of the First Note, at IOU's Georgia office, through its website, unconditionally guaranteeing performance of the Note and Security Agreement, including on all property owned by her and BPR.

15. BPR granted and/or intended to grant the same security interest in BPR's property to guaranty performance of the First Note, which ultimately received and personally benefitted from the First Funds and agreed to Georgia law/venue.

16. On 11/5/14, EH executed an Electronic Debit Agreement on behalf of BPR at IOU's Georgia office, through its website, identifying her/BPR as Payor, authorizing electronic payments for the Loan, from BPR's account to IOU's Georgia office, certifying the purpose of this Agreement was to pay the Loan and the accuracy of their account information.

17. On 11/5/14, EH/BPR approved disbursement of the First Funds, at IOU's Georgia office, by its website, for the First Loan's alleged purposes of which BPR knew and benefitted.

18. On 11/5/14, BPR received the First Funds by wire transfer from IOU, from IOU's account at an FDIC-insured bank.

19. IOU intended for its First Loan to the senior interest in all property owned by BPR and to be repaid the Funds, which would not have otherwise advanced the Funds to them under the Guaranties, Note, Security Agreement and Debit Agreement. [First Instruments] as further evidenced by a UCC-1, filed in Oklahoma on 11/14/14, Filing No. 2014111402167500.

20. On 5/12/15, EH submitted a Loan Application to IOU's website, at its Georgia office, for a commercial loan [Second Loan] on behalf of Defendant BPR.

21. On 5/13/15, EH spoke by phone with IOU's Georgia staff confirming the information in the Second Application and below Second Loan Documents on behalf of BPR.

22. On 5/13/15, EH electronically executed a Promissory Note to IOU, on behalf of BPR for the gross/principal sum of $97,276.00, at IOU's Georgia office, through its website, in exchange for IOU's Loan Funds, confirming the information in the Application and the phone call as to the Application, agreeing to Georgia law and venue in the Note. [Second Note]

23. The Second Note includes a Security Agreement, by which BPR guaranteed its real and/or personal property as collateral for this Loan, upon which IOU relied, stating:

> As security for the due and punctual payment of all amounts due or to become due and the performance of all obligations of Borrower from time to time under this Note and all extensions, renewals and amendments of any of the foregoing Borrower hereby pledges, transfers, assigns, conveys and grants a security interest to a continuing lien upon and security interest in and to all of Borrower's now owned or hereafter acquired, created or arising property including any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible, and in each case regardless of where such Property may be located and whether such Property may be in the possession of Borrower, Lender or a third party and shall include any right, title or interest in or to property of any kind whatsoever, whether real, personal or mixed, and whether tangible or intangible and (1) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions: and (2) all other tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) investment property, including certificated and uncertificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes, (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health care insurance receivables, (i) deposit accounts, (j) general intangibles, including payment intangibles and software, and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The collateral includes all accessions, attachments, accessories, parts, supplies and replacements for the collateral, all products, proceeds and collections thereof and all records and data relation thereto. [Promissory Note Paragraph 20]

24. On 5/13/15, EH electronically executed a Guaranty of the Second Note, at IOU's Georgia office, through its website, unconditionally guaranteeing performance of the Second Note and Security Agreement, including on all property owned by BPR.

25. BPR granted and/or intended to grant the same security interest in BPR's property to guaranty performance of the Second Note, which received and personally benefitted from the Funds and agreed to Georgia law/venue.

26. On 5/13/15, EH executed an Electronic Debit Agreement on behalf of BPR at IOU's Georgia office, through its website, identifying BPR as Payor, authorizing electronic

payments for the Loan, from BPR's account to IOU's Georgia office, certifying the purpose of this Agreement was to pay the Loan and the accuracy of their account information.

27. On 5/13/15, BPR approved disbursement of the Second Loan Funds, at IOU's Georgia office, by its website, for its alleged purposes of which BPR knew and benefitted.

28. The Second Loan satisfied the First Loan from which Defendant BPR benefitted.

29. The First and Second Loans shared the same terms and conditions aside from the amount of money borrowed under them by Defendant BRP, which ratified both Loans.

30. On or about 5/13/15, BPR received the Second Loan Funds by wire transfer from IOU, from IOU's account at an FDIC-insured bank.

31. IOU intended for its Second Loan to the senior interest in all property owned by BRP, recipient of the Funds and to be repaid the Funds, which would not have otherwise advanced the Funds per the Guaranty, Note, Security/Debit Agreements. [Second Instruments].

32. On 8/3/15, EH/AH blocked BPR's ACH payments to IOU on the Instruments which were in default and never cured.

33. On 8/3-8/5/15, AH/EH filed their bankruptcy cases and provided notice to IOU.

34. AH did not list any stock or ownership interest in BPR in his sworn bankruptcy schedules. [BK Doc 1: Case No. 15-11459-R, Schedule B, Line 13]

35. EH listed her stock or ownership interest in BPR as having 0 value in her sworn bankruptcy schedules as BPR's debts greatly exceeded BRP's assets [BK Doc 1: Case No. 15-11476-R, Schedule B, Line 13]

36. EH used IOU's Funds to repurchase BPR's shares from the Trustee for the sum of $100,000. [EH BK Docs 22 and 31]

37. EH/AH received bankruptcy discharges but omitted BPR as a debtor in their bankruptcies, which did not discharge BPR's liability to IOU on the Instruments/Claims.

38. IOU held and/or owned the Instruments and claims at issue [Claims] and had standing to enforce them before commencing suit, their principal balance and/or value exceeding $76,000.00, with attorney's fees as provided by law and their terms.

39. BPR breached the Instruments and/or did not satisfy the Claims, did not make payments, violated their terms, now in default; IOU accelerated payment of the balance.

40. IOU conferred the Funds evidenced by its Instruments and Claims upon BPR shown by the Instruments and other evidence.

41. BPR appreciated the benefit of the Funds, which BPR authorized, requested and/or accepted and ratified, from which BPR benefitted, such as using them to pay BPR's debts and/or acquire assets and personnel for BPR's business.

42. BPR accepted/retained the Funds, which BPR should return or compensate, which is otherwise unjustly enriched at IOU's expense, by satisfying debts and/or obtaining assets with the Funds, in which IOU has the senior interest(s), which is indebted to IOU for the unpaid balance of the Funds, plus interest, attorney's fees, costs and other charges per law.

43. BPR is liable for all conduct of its agents, done by its command and/or in prosecution of, within the scope of their agency, by which BPR benefitted and/or ratified.

44. All conditions precedent to suit occurred, were fulfilled, waived and/or their occurrence and/or fulfillment was unnecessary and/or futile.

## COUNT I: EQUITABLE, DECLARATORY AND
## RELATED RELIEF AS TO DEFENDANT BPR

45.     ¶ 1-44 are incorporated.

46.     IOU's Second Loan satisfied IOU's First Loan at the instance of BPR with the understanding that IOU would succeed to the rights and priority of the First Loan.

47.     BPR authorized, requested and/or accepted and ratified and/or otherwise benefitted from IOU's Loans, including the satisfaction of the First Loan.

48.     IOU is equitably subrogated into the First Loan, such as its security interest in BPR's property per its UCC-1 and is equitably subrogated into BPR's ownership as IOU's Funds were used to repurchase BPR's stock from the Trustee which will not prejudice anyone.

49.     The Instruments were intended to bind those receiving and benefitting from the Funds, namely BPR and encumber its Property, per the Security Agreements.

50.     The property of BPR subject to the Loans appears unencumbered by them, unjustly impeding IOU's secured interest in BPR's property for which IOU has no legal remedy.

51.     Defendant BPR breached the Second Loan which IOU is entitled to enforce by all legal/equitable rights or remedies, including obtaining attorney's fees and costs per its terms.

52.     Per 28 U.S.C. § 2201 *et seq*, § O.C.G.A. 11-9-101 *et seq*, § 18-2-1 *et seq*, § 23-1-1 *et seq*, § 44-1-1 *et seq* and applicable law, IOU requests the Court declare and establish the Second Loan is equitably subrogated into the First Loan, the senior secured interest in BPR's property, assets and proceeds, including its ownership/stock, relating back to their execution /origination; grant all just relief.

### COUNT II: EQUITABLE LIEN/EQUITABLE MORTGAGE
### AND RELATED RELIEF AS TO DEFENDANT BPR

53. ¶ 1-44 and ¶ 52 are incorporated.

54. The property of BPR, was intended to secure repayment of Instruments, per the Agreements, of which BPR knew, performance of which was evaded.

55. BPR authorized, requested, accepted and ratified and/or otherwise benefitted from the Funds, such as reacquiring its ownership/stock repayment of which BPR is to provide.

56. An equitable lien and/or equitable mortgage to satisfy the Instruments is implied on BPR's property, assets and proceeds, including its ownership/stock, which benefitted from and/or were reacquired with the Funds, valued in excess of $76,000.00.

57. Per 28 U.S.C. § 2201 *et seq*, § O.C.G.A. 11-9-101 *et seq*, § 18-2-1 *et seq*, § 23-1-1 *et seq*, § 44-1-1 *et seq* and applicable law, IOU requests the Court declare and impose a senior equitable lien and/or equitable mortgage on BPR's property, assets and proceeds including its ownership/stock, securing its Instruments, relating back to their execution and/or origination; and grant all just relief.

### COUNT III: CONSTRUCTIVE TRUST AND
### RELATED RELIEF AS TO DEFENDANT BPR

58. ¶ 1-44, ¶ 52 and ¶ 57 are incorporated.

59. The property of BPR, was intended to secure repayment of Instruments, per the Agreements, of which BPR knew, performance of which was evaded.

60. A constructive trust to satisfy the Instruments is implied on BPR's property, assets and proceeds, benefitting from the Loan, like reacquiring its ownership/stock, to avert unjustly enriching BPR, which cannot enjoy a beneficial interest in same, contrary to equity.

61.     Per 28 U.S.C. § 2201 *et seq*, § O.C.G.A. 11-9-101 *et seq*, § 18-2-1 *et seq*, § 23-1-1 *et seq*, § 44-1-1, § 53-12-132, and applicable law, IOU requests the Court declare and impose a senior constructive trust on BPR's property, assets and proceeds including its ownership/stock, securing its Instruments, relating back to their execution and/or origination; grant all just relief.

### COUNT IV: BREACH OF INSTRUMENTS AND RELATED RELIEF AS TO DEFENDANT BPR

62.     ¶ 1-44, ¶ 52, ¶ 57 and ¶ 61 are incorporated.

63.     BPR approved/ratified the Instruments, accepting the Funds, which is liable.

64.     BPR breached the Instruments and did not comply with their terms, now due.

65.     IOU accelerated its defaulted Instruments of which BPR was given notice and/or notice was not required and/or is futile, providing for payment of IOU's attorney's fees/costs.

66.     Per O.C.G.A. § 13-1-11, BPR is notified IOU shall be entitled to enforce and invoke the attorney's fees provisions of the Instruments against them, which will be further indebted for IOU's fees and costs, unless all principal, interest and other charges due to IOU under its Instruments are paid within 10 days after the service date of this Complaint.

67.     Per O.C.G.A. § 13-1-1 *et seq* and applicable law, IOU demands judgment against BPR for damages of at least $76,000.00 for the unpaid principal balance of the Instruments and attorney's fees, plus interest, costs and other charges; and all just relief.

Respectfully submitted this 12th day of November 2019.

> By:    */s/Paul G. Wersant*
> Paul G. Wersant
> Georgia Bar No. 748341
> 3245 Peachtree Parkway, Suite D-245
> Suwanee, Georgia 30024
> Telephone: (678) 264-2358
> Email: pwersant@gmail.com
> Attorney for Plaintiff
> File No. 27927